**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| and § | |
| **STATE OF TEXAS, ex rel.** § | |
| and § | |
| **LESLIE ANN WILLIAMS** § | |
| **PLAINTIFFS,** § | |
| **VS.** § | |
| § | |
| **MCKESSON PROVIDER** § | |
| **TECHNOLOGIES** § | |
| and § | |
| **MCKESSON CORPORATION** § | |
| and § | |
| **STEPEHN LARSON,** § | **FILED UNDER SEAL** |
| **DEFENDANTS.** § | **PURSUANT TO** |
| § | **31 U.S.C. §3730(B)(2)** |

## *QUI TAM* COMPLAINT

On behalf of the Unites States of America and State of Texas, Plaintiff and Relator Leslie Ann Williams files this *qui tam* and retaliation complaint against Defendants McKesson Corporation, McKesson Provider Technologies and Stephen Larson, alleging as follows:

**INTRODUCTION**

1.   This is an action to recover penalties and damages on behalf of the United States of America and the State of Texas arising from false and fraudulent claims and statements made by the defendant McKesson Provider Technologies to the United States and State of Texas in violation of the False Claims Act, 31 U.S.C. § 3729 *et seq*. (FCA)

1

and the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code Ann. §36.01, *et seq*. (MFPA).

## PARTIES

2.  The United States of America and the State of Texas are the Plaintiffs on whose behalf Leslie Ann Williams brings this action under the FCA and MFPA.

3.  Leslie Ann Williams (Relator) is a citizen and resident of the State of Texas. She is a former Senior Director of Account Management for McKesson Provider Technologies. She brings this action on behalf of both Texas and the United States of America and is the original source of the information provided.

4.  Defendant McKesson Corporation is a corporation headquartered in San Francisco, California that specializes in the distribution of health care systems, medical supplies and pharmaceutical products.

5.  Defendant McKesson Provider Technologies is a subsidiary of McKesson Corporation, is headquartered in Alpharetta, Georgia and does business in Dallas, Texas. McKesson Provider Technologies provides information technology and healthcare revenue cycle management for the healthcare industry that includes patient registration, scheduling, charge coding and charge entry, claims, statement and electronic medical record processing, payment posting and reporting for inpatient, outpatient, hospital, ancillary and physician services. References to McKesson in this complaint refer to McKesson Provider Technologies.

6.  Defendant Stephen Larson (Larson) is a dentist holding a Doctor of Medical Dentistry (DMD) and employed by University of Texas Health Sciences Center at Houston in its anesthesia department.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1331 and 31 U.S.C. §3732(a)(b) which specifically confer jurisdiction on this Court for actions brought under the False Claims Act and over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under section §3730.

8. This Court has personal jurisdiction over defendants pursuant to 31 U.S.C. § 3732 (a).

9. Venue is proper in this district pursuant to 31 U.S.C § 3732(a) which provides that any action brought under §3230 may be brought in any judicial district in which the defendant can be found, resides, transacts business or in which any act prescribed by §3729 occurred. Defendant McKesson Provider Technologies is a subsidiary of McKesson Corporation and transacts business in Dallas and Houston, Texas.

10. This Court also has supplemental jurisdiction over qui tam claims brought on behalf of the United States pursuant to 28 U.S.C. §1367, which provides that where the district court has original jurisdiction, it also has supplemental jurisdiction over all claims that form part of the same case or controversy.

11. This Complaint is to be filed in camera, remain under seal for a period of at least sixty (60) days and shall not be served on the Defendants until the Court so orders.

12. Simultaneously with the filing of this Complaint Ms. Williams provided the Attorney General of the United States and to the United States Attorney for the Northern District of Texas, a statement of all material evidence and information related to the Complaint. Such disclosure statement supports the existence of false claims by McKesson in connection with Medicare and Medicaid.

## LEGAL BACKGROUND

13. Medicare is the federally funded reimbursement program that pays for the costs of certain health care services and health care. Entitlement to Medicare is based on age, disability or affliction with end-stage renal disease.

14. Medicaid is a public assistance program providing for payment of medical expenses for children under the age of 21, orphans, low-income and disabled patients. Funding for Medicaid is shared by the state and federal government.

15. The False Claims Act and subsequent amendments prohibits persons and entities from knowingly submitting or causing to be submitted false or fraudulent claims to the Government under the Medicare program. The Texas Medicaid Fraud Prevention Act is modeled after the FCA and seeks to prevent similar harm to the Medicaid Program administered by the State of Texas.

16. In order to be reimbursed under either Medicare or Medicaid, health care providers must represent to both that they are certified, licensed and qualified providers.

17. The amount of reimbursement under Medicare and Medicaid is based on the type of service provided, who provides service and length of time service is rendered and/or supervised.

**FACTUAL BACKGROUND**

18. McKesson provides revenue cycle and billing services for the physician practice plans of the University of Texas-Houston Medical Center (UTH).

19. After UTH physicians provide services to a patient, they submit their records and charge invoices to McKesson. McKesson then reviews the medical records and charge invoices, inputs the appropriate diagnosis, anesthesia/medical and provider billing codes and generates claims and billing statements that are sent to the patient, commercial and managed care insurance providers, Medicare or Medicaid. The billing statements are either paid or appealed by the patient. Claims are either paid or denied by the third-party payor. McKesson receives the payments and posts the payments for distribution and reporting to the physicians. If the claims are denied or not paid appropriately, McKesson reviews the physician's account to try and determine the reason for the denial. Part of that review involves examining the insurance information, coding, actual charges and sometimes the physician's credentials. After review, McKesson makes a determination whether to appeal the denial and resubmit the claim(s) for payment.

20. Williams was hired by McKesson on June 4, 2007 as a Senior Director of Client Management. Part of Williams's responsibilities involved reviewing physicians' requests and accounts after denials. Williams managed the patient accounts billed for the physicians in UTH's departments of anesthesia, orthopedic surgery, radiation, EMS, Surgical Trauma.

21. Stephen Larson (Larson) is a dentist holding a Doctor of Medical Dentistry (DMD) and employed by UTH in its anesthesia department.

22. Sometime in May of 2008, Larson's account came to Williams's attention because of repeated denials of payments.

23. Williams reviewed Larson's accounts, provider enrollment files, certifications and licenses, along with and the various coding, billing diagnosis, medical, dental codes and modifiers and the claim billing statements he had been submitting for payment. According to the billing data and information in his provider enrollment file, Larson was billing for and providing supervision for anesthesia services outside the scope of general dentistry and oral surgery. His billings indicated he administered anesthesia during labor and delivery, various types of general, pediatric, orthopedic and trauma surgeries. Larson was also providing concurrent anesthesia services, coding and signing the patient medical record and billing as a medical doctor (M.D.). Larson also signed off on charts for other mid-level providers and medical students in either a supervisory or provider capacity so as to ensure payment of those providers.

24. Williams then reviewed Larson's credentials and discovered he was not authorized to administer anesthesia outside the practice of dentistry. McKesson's Code of Business Conduct and Ethics, requires compliance of all employees, contractors and vendors and sets forth a duty to report suspected wrongdoing under the flase claims recovery education policy. It states in part that "...McKesson is committed to complying with all federal and state laws designed to prevent healthcare fraud and abuse and to detecting and protecting against fraud, abuse and waste in these programs especially the federal False Claims Act and all applicable state low analogs." And at page 17 of 32, paragraph 2: "Any employee, contractor or vendor who has knowledge of or, in good faith suspects any wrongdoing, including a violation of federal or state law, should report

6

it internally immediately so that an investigation can be conducted and appropriate action taken.  Reports can be made to a supervisor, the business unit's compliance office, the law department, or anonymously through the Ethics Line, which is available 24-hours a day, 7 days a week (888) 475-4358."

25.  Accordingly, Williams notified her direct supervisor Elizabeth Duhon, McKesson's corporate compliance and revenue cycle director, that she would not submit Larson's statements or claims for anesthesia performed outside the scope of dentistry to Medicare or Medicaid, the third-party payor or the self-pay patients.

26.  In June of 2009, Williams discovered that McKesson was still processing Larson's out of scope billing statements for general anesthesia for surgeries, labor and deliveries, submitting them for payment to Medicare and Medicaid and resubmitting them after denial. Ms. Williams again notified Duhon along with Courtney Hanna in McKesson's corporate compliance department. UTH's assistant vice-president of revenue cycle management, and billing and coding compliance manager were also notified.

27.  In October, November and December of 2009 Williams repeatedly voiced her concerns regarding Larson's fraudulent billing and signing off with management at both McKesson and UTH.

28.  On January 4, 2010, Williams instructed one of her managers to again review Larson's credentials and follow up on the status of the investigation submitted to McKesson's corporate compliance. The following day, Ms. Williams received a 30 day notice of termination Defendants attributed to a reduction in force.

## COUNT I

### Violation of False Claims Act

29. Ms. Williams realleges and incorporates by reference paragraphs 1 through 28 above.

30. Each fraudulent claim submitted by Larson and McKesson on behalf of Larson is attached hereto as Exhibit A.

31. Between 2007 and 2010, Larson and McKesson, in deliberate ignorance or reckless disregard of the truth or falsity of the information provided and endangerment of patients, conspired with Larson and UTH to cause to be presented to state and federally funded Medicaid health care programs Larson's false and fraudulent claims for payment in violation of the FCA.

32. Between 2007 and 2010, Larson and McKesson, in deliberate ignorance or reckless disregard of the truth or falsity of the information provided and endangerment of patients, conspired with Larson and UTH to defraud the United States government by causing Larson's false and fraudulent claims to be paid or approved by the government in violation of the FCA.

33. The United States and the state Medicaid programs have been damaged by the payment of the false and fraudulent claims and is entitled to a penalty in an amount up to $11,000 for each and every false and fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Larson and McKesson.

## **COUNT II**

### **Violation of Texas Medicaid Fraud Preventive Act**

34. Ms. Williams realleges and incorporates by reference paragraphs 1 through 33 above.

35. Each fraudulent claim submitted by Larson and McKesson on behalf of Larson is attached hereto as Exhibit A.

36. Between 2007 and 2010, Larson and McKesson, in deliberate ignorance or reckless disregard of the truth or falsity of the information provided, conspired with Larson and UTH to cause to be presented to state and federally funded Medicaid health care programs Larson's false and fraudulent claims for payment in violation of the MFPA.

37. Between 2007 and 2010, Larson and McKesson, in deliberate ignorance or reckless disregard of the truth or falsity of the information provided and endangerment of patients and endangerment of patients, conspired with Larson and UTH to defraud the State of Texas by causing Larson's false and fraudulent claims to be paid or approved by the government in violation of the MFPA.

38. The State of Texas has been damaged by the payment of the false and fraudulent claims.

39. The State of Texas is entitled to a penalty up to $11,000 for each and every false and fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Larson and McKesson.

## COUNT III

**Violation of Texas Medicaid Fraud Prevention Act Retaliation Provision**

40. Ms. Williams realleges and incorporates by reference paragraphs 1 through 39 above.

41. Texas Human Resources Code §36.115 provides that "[a] person discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms of employment by the person's employer because of a lawful act taken by the person in furtherance of an action under this subchapter, including investigation for…an action filed under this subchapter" is entitled to not les than two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorney's fees.

42. As set forth above, McKesson retaliated against Ms. Williams and terminated her for continuing to raise concerns that McKesson was submitting false claims on behalf of Larson, investigating those concerns and reporting them to her superiors.

43. As a direct and proximate result of this unlawful discharge, Ms. Williams has suffered emotional pain and mental anguish along with serious hardship, including lost wages and special damages associated with her efforts to obtain alternative employment, in an amount to be proven at trial.

## PRAYER FOR RELIEF

Wherefore, Relator demands and prays that judgment be entered in its favor as follows:

1. On Count One under the False Claims Act for the amount of the United States' damages, trebled as required by law, and such civil penalties as are required by law, together with all such relief as may be just and proper.

2. On Count Two under the Texas Medicaid Fraud Prevention Act for the amount to the State of Texas' damages trebled as required by law, and such civil penalties as are required by law, together with all such relief as may be just and proper.

3. On Count Three for compensatory and punitive damages in an undetermined amount, together with costs and interest, and for such other relief as may be just and proper.

                                                          Respectfully submitted,

                                                          */s/* N. Jude Menes_____
                                                          N. Jude Menes
                                                          Texas Bar No. 24004815

                                                          Lurlia A. Oglesby
                                                          MENES LAW FIRM
                                                          One Empire Building, Suite 635
                                                          1140 Empire Central Drive
                                                          Dallas, Texas 75247
                                                          214-631-2751
                                                          214-631-2753