UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF TEXAS, ex rel. LESLIE ANN WILLIAMS, <br><br>Plaintiffs, <br><br>v. <br><br>McKESSON CORPORATION, and D/B/A McKESSON PROVIDER TECHNOLOGIES, and DR. STEPHEN LARSON, <br><br>Defendants. | § § § § § § § § § § § § § § § CIVIL ACTION NO. 3:12-CV-0371-B |

### MEMORANDUM OPINION AND ORDER

Defendants McKesson Corporation d/b/a McKesson Provider Technologies ("McKesson") and Dr. Stephen Larson ("Dr. Larson") move to dismiss (docs. 36, 40) the Second Amended *Qui Tam* Complaint ("Complaint"). For the following reasons, the Court **GRANTS** Defendants' Motions to Dismiss (docs. 36, 40) and **DISMISSES WITHOUT PREJUDICE** the Complaint's three claims.

### I.

### BACKGROUND

Relator Leslie Ann Williams ("Williams") filed this *qui tam* action on behalf of the United States and State of Texas after she allegedly uncovered a series of false Medicare/Medicaid claims submitted by Defendants.[1] Second Am. Compl. ("Compl."), Doc. 27, ¶¶ 1, 36. These claims were

---

[1] The following facts, drawn from the Complaint, are "accepted as true" for purposes of the Motions. *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012). That said, the Court is not "bound to accept as true

- 1 -

paid out indirectly by the U.S. and Texas governments, since Medicare is a federally-funded program that pays for certain health care services "based on age, disability, or affliction with end-stage renal disease," and Medicaid is a federally/state-funded program that pays for certain medical expenses incurred by "children under the age of 21, orphans, low-income patients, and pregnant and disabled patients." *Id.* ¶¶ 11, 12, 17.

Defendant McKesson is a Texas-based entity that provides, among other things, billing-related services to the health care industry. *Id.* ¶ 4. McKesson allegedly submitted the claims at issue for services rendered by Defendant Dr. Larson, "a dentist holding a Doctor of Medical Denistry" ("D.M.D.") who works in the anesthesiology department at the University of Texas Health Science Center–Houston ("UTHSC"). *Id.* ¶¶ 5. These claims were purportedly "false" or "fraudulent," because they sought reimbursement from Medicare/Medicaid "for services that were outside the scope of [Dr. Larson's] authorized practice area." *Id.* ¶ 25. More specifically, Dr. Larson "was billing for and providing supervision for anesthesia services outside the scope of general dentistry and oral dentistry," which, according to Williams, exceeded Dr. Larson's D.M.D licensure. *Id.* ¶ 24. Dr. Larson also apparently falsely signed patients' "record[s] and billing as a medical doctor (M.D.)," and "routinely signed off as [an M.D.] on medical charts and medical academic records for other mid-level providers and medical students in either a supervisory or provider capacity so as to ensure payment of those providers." *Id.*

The Complaint sets forth the general process by which Dr. Larson and McKesson worked

---

a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Such assertions are instead characterized as allegations of the Relator.

together to submit these purportedly false medical bills. The general process starts with UTHSC doctors, such as Dr. Larson, filling out medical records and charge-invoices for services rendered and sending those records to McKesson, who generates a claim and billing statement after reviewing the pertinent records. *Id.* ¶ 17. McKesson then sends these bills to patients, and when appropriate, third-party payors, such as insurance companies or Medicare/Medicaid providers. *Id.* ¶ 17. If Medicare/Medicaid or some other third party payor denies McKesson's reimbursement claim or does not pay the requested amount, McKesson "review[s] the patient's account to try and determine the reason for the denial." *Id.* ¶ 17. Based on this review, McKesson decides "whether to appeal the denial and resubmit the claim(s) for payment." *Id.*

Relator Williams claims she discovered Dr. Larson's non-dental anaesthesia billing while working at McKesson. Hired in 2007 as Senior Director of Client/Account Management, Williams's responsibilities at McKesson included "reviewing doctors' requests and accounts after denials." *Id.* ¶ 3, 18. "Sometime in May of 2008," Williams noticed "repeated denials of claims and requests for follow-up and payment submitted on [Dr. Larson's] bills." *Id.* ¶ 22. This led her to "revie[w] Dr. Larson's patients' accounts, provider enrollment files, certifications and licenses, along with various coding, billing diagnosis, medical, dental codes and modifiers and the claim billing statements he had been submitting for payment." *Id.* ¶ 24. Based on this, Williams concluded that Dr. Larson was submitting bills for services "outside the scope of his authorized practice area." *Id.* ¶ 25. Accordingly, she "notified her direct supervisor Elizabeth Duhon," who is "McKesson's corporate compliance and revenue cycle director." *Id.* ¶ 27.

Over a year later, June 2010, "McKesson was still processing Dr. Larson's out of scope billing statements," so Williams "again notified Ms. Duhon" as well as certain executives responsible for

compliance at McKesson and UTHSC "that this was wrong and constituted false claim[s]." *Id.* ¶ 29. After "repeatedly voic[ing] her concerns" throughout 2009 to no avail, Williams, on January 4, 2010, "instructed one of her managers under her supervision to again review Dr. Larson's credentials and follow up on the status of the investigation submitted to McKesson's corporate compliance." *Id.* ¶¶ 29, 31. "The next day," McKesson gave Williams a thirty day notice of her termination. *Id.* ¶ 32. And despite attributing Williams's termination to a reduction in force, "McKesson posted an advertisement seeking to hire someone for her position" within a week of her termination. *Id.* ¶ 33.

On February 3, 2012, Williams filed suit (doc. 1) against Defendants. After amending twice, Williams filed the current version on her Complaint—the Second Amended *Qui Tam* Complaint (doc. 27)—on August 22, 2013. The three–count Complaint charges Defendants with violating the False Claims Act ("FCA") and Texas Medicaid Fraud Prevention Act ("TMFPA") in Counts I and II,[2] and claims McKesson violated the TMFPA's Retaliation Provision, TEX. HUM. RES. CODE ANN. § 36.115, in Count III. In Counts I and II, Williams seeks damages for the United States and State of Texas, a portion of which she would be entitled to receive under the FCA's and TMFPA's *qui tam* provisions. In Count III, she seeks compensatory and punitive damages for McKesson's retaliation.

Per the FCA's and TMFPA's procedural rules, the United States and State of Texas filed notices with this Court (docs. 16, 18) expressing their intentions not to intervene in this matter, allowing Williams to pursue these claims on her own. The Court, thus, ordered the Complaint unsealed and served on Defendants. Upon receiving service, Defendants promptly moved to dismiss; McKesson filed its Motion to Dismiss on October 31, 2013 (doc. 36) while Dr. Larson filed his on

---

[2] As discussed below, Williams does not specify the particular FCA and TMFPA provisions under which she brings her first two claims against Defendants.

January 3, 2013 (doc. 40). Though the motions differ in certain respects, both Defendants seek dismissal of Williams's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).[3] After Williams responded to both motions (docs. 39, 46), Defendants filed separate replies (docs. 42, 47), rendering the motions ripe for consideration.

## II.

## LEGAL STANDARDS

*A.     Rule 12(b)(6) Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When analyzing Rule 12(b)(6) motions, courts generally consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). During this review, factual allegations must be viewed "in the light most favorable to the plaintiffs." *Kopp v. Klien*, 722 F.3d 327, 333 (5th Cir. 2013). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (2007) (quoting *Papasan*, 478 U.S. at 286).

Rule 12(b)(6) motions turn on whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Facially plausible complaints "allege more than labels and conclusions[;] . . . [the] factual allegations must be enough to raise a right to relief above the speculative level." *Jabaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 318 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). If the allegations raise no entitlement to relief, "this basic

---

[3] Dr. Larson also seeks dismissal pursuant to Rule 12(b)(1), but as mentioned below, the Court does not address, for now, the Rule 12(b)(1) issues raised in the parties' briefs.

deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuviller v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 557).

   B. *Rule 9(b)'s Heightened Pleading Requirements*

In addition to satisfying Rule 12(b)(6)'s standards, the Complaint's FCA and related TMFPA claims must also meet Rule 9(b)'s particularity requirements. *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 384 (5th Cir. 2003) (citations omitted); *U.S. ex. rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 827 (E.D. Tex. 2008) (applying Rule 9(b) to TMFPA claim). Thus, Williams must plead "with particularity the circumstances" surrounding the false or fraudulent claims alleged. FED. R. CIV. P. 9(b). This, "at minimum," means Williams must "'set forth the who, what, when, where, and how of'" Defendants' unlawful conduct. *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir.1997)). Failure to comply with Rule 9(b)'s requirements authorizes the Court to dismiss the pleadings as it would for failure to state a claim under Rule 12(b)(6). *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

## III.

## ANALYSIS

Williams's three-count Complaint primarily alleges that Defendants knowingly submitted "false" or "fraudulent" reimbursement claims to government-funded Medicare/Medicaid programs in violation of the FCA and TMFPA. Compl. ¶¶ 36, 37, 41, 42. These claims were "false" or "fraudulent," according to Williams, because they sought reimbursement for Dr. Larson's general anesthesia services, which Williams believes exceeded the scope of Dr. Larson's D.M.D. licensure.

The Complaint further asserts that McKesson, despite being aware of the above facts, knowingly submitted Dr. Larson's bills to Medicare/Medicaid "[b]etween 1977 and 2010 (likely up to the present date)." *Id.* In Count III, Williams contends that McKesson violated the TMFPA's retaliation provision by terminating her employment after raising concerns regarding the legality of Dr. Larson's non-dental anesthesia billing. *Id.* ¶ 47.

Defendants separately move to dismiss Williams's FCA and TMFPA claims on a number of grounds. Most persuasively, both argue that the Complaint does not properly allege an essential element of Williams's claims—the existence of a false or fraudulent claim submitted to the government for payment. This, according to Defendants, requires the Court to dismiss the Complaint's FCA and TMFPA claims under Rules 12(b)(6) and 9(b). Finding that dismissal is warranted on these grounds, the Court declines to address the other purported shortcomings of the FCA and TMFPA claims raised by the Defendants. And as seen below, the Court need not address the merits of Williams's TMFPA retaliation claim, because the Court's dismissal of Williams's federal cause of action warrants dismissal of this supplemental state law claim as well.

    A.    *FCA and TMFPA Claims*

Although, Williams does not identify in her Complaint which provisions of the FCA or the TMFPA that Defendants allegedly violated, Williams maintains that one can reasonably discern from her pleadings that the FCA and TMFPA provisions at issue are those "related to presentation of false and fraudulent claims." Pl.'s Resp. McKesson's Mot. Dismiss ("Pl.'s McKesson-Resp."), Doc. 39, at 3. Although the Defendants urge the Court to dismiss the Complaint for failing to specify the provisions at issue, they do note, based on the pleadings, that "there are only two subsections of the FCA which Relator arguably intended to allege McKesson violated."*See* McKesson's Mot. Dismiss

("McKesson's Mot."), Doc. 36, at 13. Defendants identify those subsections as § 3729(a)(1)(A) and § 3729(a)(1)(C). *Id.* The Court agrees that Defendants could reasonably ascertain that Count I of Williams' Complaint is based on the false claim presentment provisions of 31 U.S.C. § 3729(a)(1). The Court further concludes that Count II is based on the analogous state law provisions in TEX. HUM. RES. CODE ANN. § 36.002.[4] *Id.* at 5. Though the language of the FCA and the TMFPA differ, the parties agree that Williams's FCA and TMFPA claims depend on the same operative facts and legal requirements. *See, e.g., id.* ("[A]s McKesson [] admit[s], the provisions of the TMFPA mirror provisions of the FCA."). As other courts have done in these circumstances,[5] the Court evaluates both of Williams's claims under the FCA's well-defined legal requirements.

The FCA's false presentment provisions generally require relators to establish four elements: "(1) a false statement or fraudulent course of conduct; (2) that was made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money (i.e., that involved a claim)."[6] Defendants primarily challenge the first FCA element—the existence of a false or fraudulent claim. Specifically, they argue first, that Williams has not plausibly alleged a false

---

[4] The false claim provisions under 31 U.S.C. § 3729(a)(1) make unlawful "any person who–(A) knowingly presents or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or] (C) conspires to commit a violation of subparagraph (A), (B), . . ." 31 U.S.C. § 3729(a)(1)(A), (B), & (C). Section 36.002 of the TMFPA details a number of different "Unlawful Acts" related to false, fraudulent, or misleading representations and claims made in relation to the Texas Medicaid program. *See* TEX. HUM. RES. CODE. ANN. § 36.002.

[5] *See, e.g., United States v. Planned Parenthood Gulf Coast, Inc.*, – F. Supp. 2d –, 2014 WL 1933554, at *3 (S.D. Tex. May 14, 2014) (applying FCA law to the TMFPA's "analogous provisions prohibiting substantially the same conduct in the context of the State's Medicaid program").

[6] *United States ex rel. Spicer v. Westbrook*, – F.3d –, 2014 WL 1778030, at *7 (5th Cir. May 5, 2014) (citing *United States ex rel. Longhi v. United States*, 575 F.3d 458, 467 (5th Cir. 2009)).

or fraudulent claim for purposes of Rule 12(b)(6), and second, that Williams has not particularly stated the circumstances surrounding their allegedly false or fraudulent claims for purposes of Rule 9(b). *See* McKesson's Mot., Doc. 36, at 8-9, 14, 19; Larson's Mem. Supp. Mot. Dismiss ("Larson's Mot."), Doc. 41, at 16-18, 21, 22-25.

1. Plausibility of False Claim Allegations Under Rule 12(b)(6)

Courts typically analyze the FCA's first element by asking whether a "legally" or "factually" false claim for payment has been established.[7] A *factually* false claim is one in which "the prospective payee has submitted an inaccurate description of goods or services provided, or a request for reimbursement for goods or services never provided."[8] A *legally* false claim, on the other hand, usually involves a prospective payee certifying an item's "compliance with a statute or regulation as a condition to government payment" while knowing that item is not in compliance.[9]

Defendants maintain that the Complaint does not plausibly allege that the reimbursement claims they submitted to Medicare/Medicaid were factually or legally false. For factual falsity, Defendants assert that "Williams does not make a single allegation regarding a claim for payment by [Defendants] that reflects an inaccurate description of the services provided or a request for services

---

[7] *United States ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709, 717 (N.D. Tex. 2011) (citation omitted); *see also United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1168 (10th Cir. 2010) ("Under § 3729(a), liability can attach when a government payee submits either a legally or factually false request for payment.").

[8] *Wall*, 778 F. Supp. 2d at 718 (citing *Mikes v. Straus*, 274 F.3d 687, 697 (2d Cir. 2001)).

[9] *Id.* at 717-18 (citing *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997)).

never provided."[10] Larson's Mot. 17; *see also* McKesson Mot. 9. Regarding legal falsity, Defendants argue that the Complaint "contains no allegations concerning an actual certification to the Government that was a prerequisite to obtaining the government benefit or a single claim for which [Defendants] certified [their] compliance with federal law." McKesson Mot. 10 (quotations and alterations omitted); *see also* Larson's Mot. 18. The Court agrees with both of Defendants' points.

With respect to factual falsity, the alleged circumstances do not "involv[e] an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided."[11] More specifically, the Complaint does not assert that Dr. Larson submitted bills and medical records to McKesson—who sent Medicare/Medicaid reimbursement claims based on these records—for services he never actually provided. Nor does the Complaint allege that Defendants incorrectly described the non-dental anesthesiology services Dr. Larson performed and for which he sought reimbursement for. Instead, the Complaint indicates that Dr. Larson did indeed perform the services at issue and represented to McKesson, who in turn represented to Medicare/Medicaid, that he was seeking reimbursement for these precise services. In short, the government is alleged to have received exactly what it paid for—Dr. Larson's anesthesia services performed on Medicare/Medicaid-eligible patients—and as such, the Complaint does not plausibly demonstrate a factually false claim.

In regards to legal falsity, the Complaint fails to plausibly allege that Defendants falsely certified "compliance with a federal statute, regulation, or contract that is a prerequisite to obtaining

---

[10] The Court does not consider, for now, Dr. Larson's argument and supporting documentation purportedly showing that he "was qualified and credentialed to perform the services at issue." Larson's Mot. 16.

[11] *Mikes*, 274 F.3d at 697 (citing Robert Fabrikant & Glenn E. Solomon, *Application of the Federal False Claims Act to Regulatory Compliance Issues in the Health Care Industry*, 51 ALA. L. REV. 105, 111 (1999)).

the government benefit."[12] Because "claims for services rendered in violation of a statute [or regulation] do not necessarily constitute false or fraudulent claims under the FCA,"[13] it is not enough for Williams to allege simply that the reimbursement claims at issue covered services Dr. Larson rendered in violation of a statute or regulation. Rather, she must plausibly allege that "the government expressly conditioned payment on compliance with the underlying statute or regulation," and that Defendants falsely certified their compliance with this underlying law.[14]

Here, Williams has not plausibly alleged that payment of the Medicare/Medicaid claims at issue was expressly conditioned on Defendants' compliance with a particular statute or regulation. In conclusory fashion, the Complaint states that "[i]n order to be reimbursed under either Medicare or Medicaid, health care providers must represent to both that they are certified, licensed and qualified providers." Compl. ¶ 14. Similarly, Williams asserts in her brief that Dr. Larson "knew that as a prerequisite, Medicare/Medicaid required him to be properly certified before performing anesthesia procedures in non-dental cases and submitting bills for such procedures." Pl.'s Resp. Larson's Mot. Dismiss, Doc. 46, at 7-8. But nowhere does Williams cite any legal authority to show that Dr. Larson's licensure compliance was a precondition to payment, much less an express precondition. Without more, these conclusory assertions fail to plausibly establish that the

---

[12] *United States ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 765 (S.D. Tex. 2010) (citing *United States ex rel. Graves v. ITT Educ. Servs., Inc.*, 284 F. Supp. 2d 487, 497 (S.D. Tex. 2003), *aff'd*, 111 Fed.Appx. 296 (5th Cir. 2004)).

[13] *Thompson*, 125 F.3d at 902.

[14] *United States ex rel. Steury v. Cardinal Health, Inc.*, 735 F.3d 202, 207 & n. 3 (5th Cir.2013) (internal citation omitted). Williams has not clarified whether she is basing her FCA/TMFPA claims on an express or implied certification theory. But since she has not alleged that Defendants expressly told Medicaid/Medicare that Dr. Larson's services were in compliance with the underlying law at issue, Williams is presumably relying on the implied–certification theory.

reimbursement claims at issue were "legally" false.[15]

Ignoring the numerous cases interpreting the FCA's "false or fraudulent claim" language, Williams weakly urges that the FCA, as a whistleblower statute, should be broadly construed. Pl.'s McKesson-Resp. 8. Williams reasons, albeit with no apposite authority,[16] that the Defendants' reimbursement claims are "false or fraudulent" because the provider of the services for which reimbursements is sought—Dr. Larson—violated an unidentified licensure regulation while performing those services. *Id.* at 8-9. But as the Fifth Circuit has made clear, the FCA "does not create liability merely for a health care provider's disregard of [g]overnment regulations . . . unless, as a result of such acts, the provider knowingly asks the [g]overnment to pay amounts it does not owe."[17] Hence, Dr. Larson's alleged violation of licensure provisions does not, alone, render the Medicare/Medicaid bills at issue "false or fraudulent" under the FCA or TMFPA. As such, the Court finds that Williams has failed to plausibly allege a "false or fraudulent" claim as required by the FCA and TMFPA, and thus, dismissal is warranted under Rule 12(b)(6).

---

[15] *See United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 269 (5th Cir. 2010) ("[E]ven if a contractor falsely certifies compliance (implicitly or explicitly) with some statute, regulation, or contract provision, the underlying claim for payment is not 'false' within the meaning of the FCA if the contractor is not required to certify compliance in order to receive payment.").

[16] The only FCA case Williams cites here is *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009), which is clearly distinguishable. *Grubbs* involved a scheme to bill Medicare/Medicaid for services never rendered, whereas the bills submitted in this case were for services Dr. Larson did render.

[17] *United States ex rel. Wilard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 381 (5th Cir. 2003); *see also United States ex rel. Wright ex rel. Wright v. Comstock Res., Inc.*, 456 F. App'x 347, 353 (5th Cir. 2011) (unpublished) (citing *Mikes*, 274 F.3d at 699; *Thompson*, 125 F.3d 899, 902 (5th Cir.1997)) ("[T]he FCA is not a 'blunt instrument' for enforcing federal statutes. . . ."); *United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 674-75 (5th Cir. 2003) ("It is only those claims for money or property to which a defendant is not entitled that are 'false.'").

2. <u>Sufficiency of False Claim Allegations Under Rule 9(b)</u>

The Complaint similarly fails to satisfy Rule 9(b)'s particularity requirements for its FCA and TMFPA claims. As mentioned, "[a]t minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where, and how of the alleged fraud [or false claim]."[18] Of course, this rule "is context specific" and must be applied in a way "that effectuates [the goals of] Rule 9(b) without stymieing legitimate efforts to expose fraud."[19]

The Complaint's primary failure here is that it does not state with particularity *how* Defendants' claims were false. The Complaint highlights general Medicare/Medicaid rules related to reimbursement that Dr. Larson's out-of-scope services apparently violated,[20] and seemingly asserts that Defendants' claims were false or fraudulent because they related to these unlawful services. Under these circumstances, "[t]he elements of the [underlying Medicare/Medicaid] violation must also be pleaded with particularity under Rule 9(b)."[21] The Complaint, however, does not even identify which Medicare/Medicaid statutes, rules, or regulations Defendants' allegedly violated, much less state with particularity how Defendants violated these rules. Without more particularity, Defendants are left without notice of how their actions are unlawful—precisely what Rule 9(b) was

---

[18] *United States ex rel. Stephenson v. Archer Western Contractors, LLC*, 548 F. App'x 135, 139 (5th Cir. 2013) (unpublished) (quoting *Thompson*, 125 F.3d at 903).

[19] *Grubbs*, 565 F.3d at 190.

[20] *See* Compl. ¶ 14 ("In order to be reimbursed under either Medicare or Medicaid, health care providers must represent to both that they are certified, licensed and qualified providers."); *id.* ¶ 15 ("The amounts of reimbursement made under Medicare and Medicaid are based on the type of services being provided, who provides services, and the length of time the services are rendered and/or supervised.").

[21] *United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013) (unpublished) (noting how the defendant's alleged violation of the Anti-Kickback Statute in submitting "false" claims pursuant to the FCA must also be pled with particularity under Rule 9(b)).

designed to avoid.[22]

Similarly, the Complaint does not clarify *what* false or fraudulent claims Defendants supposedly submitted, *when* Defendants submitted these claims, and *how* they were falsely prepared. According to the Complaint, UTHSC doctors, including Dr. Larson, submit charge–invoices and medical records to McKesson after performing services on patients, and McKesson then generates a bill that it sends to Medicare/Medicaid for repayment. Compl. ¶ 17. These allegations seem to suggest that the bills McKesson submits to Medicare/Medicaid represent the "false claims" at issue. The contents of these bills, however, is never mentioned in the Complaint, so the Court cannot determine what, if any, false statements are made therein. Likewise, the Complaint does not identify any particular dates in which these false bills were sent, instead asserting generally that false claims were submitted "[b]etween 1977 and 2010 (and likely up to the present date)." *Id.* ¶¶ 36, 41.

Further, the Complaint does not explicitly identify the bills McKesson sent to Medicare/Medicaid as the "false" claims at issue. Instead, Williams attaches a spreadsheet to her Complaint as Exhibit A and contends that this represents "[a] sample of the fraudulent claims submitted by" Defendants. *Id.* ¶¶ 35, 40. But beyond this conclusory description, Exhibit A is not explained in any way—not even in Williams's brief. From what the Court can discern, Exhibit A appears to be a spreadsheet related to services Dr. Larson performed over a certain period of time, with information that includes invoice numbers, date of service, the location of the services, the provider (Dr. Larson for each entry), charges, insurance payors (some of whom are

---

[22] *See Grubbs*, 565 F.3d at 190 ("Rule 9(b)'s objectives [include] ensuring the complaint provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to discover unknown wrongs.'").

Medicaid/Medicare, some of whom are not) and other payment-related information. Most importantly, Williams does not point to a single falsity on Exhibit A's thirty–four pages. In fact, Exhibit A lists Dr. Larson as "DMD" under the provider entries, which seemingly contradicts the Complaint's assertion that Dr. Larson routinely billed patients as an M.D. *See id.* ¶ 24. At the very least, these conflicting and undetailed assertions leave Defendants without adequate notice of what particular false claims they must defend against and how these claims were purportedly false.

Lastly, Dr. Larson's purportedly false statements also lack particular details. Dr. Larson allegedly signed off and coded bills as an M.D. at certain times "so as to ensure payment" would be made. *Id.* ¶ 24. But the Complaint never indicates *when* any of these false statements were made. At one point it alleges that Dr. Larson "routinely" signed records falsely, *id.*, but it never provides a single date as Rule 9(b) requires. The Complaint also does not explain *how* Dr. Larson's false representations were connected to the reimbursement claims McKesson apparently submitted. As mentioned, the entries in Exhibit A list Dr. Larson as D.M.D., so it is not clear why he would sign off as M.D. on other records when the "false claims" allegedly contained in Exhibit A list him as D.M.D. For all these reasons, the Complaint falls well short of alleging the particular details required by Rule 9(b) for purposes of establishing a false or fraudulent claim under the FCA and TMFPA.

B.      *TMFPA Retaliation Claim*

The Complaint's third and final claim concerns Williams's allegations that McKesson terminated her employment in retaliation for her internal FCA/TMFPA reporting. McKesson moves to dismiss this TMFPA retaliation claim based on certain legal deficiencies in Williams's Complaint. McKesson also argues that the Court should follow "the general approach of federal courts, . . . [and] dismiss the supplemental state law claims if the underlying federal claims are dismissed." McKesson's

Mot. 22 n.9. While Williams argues that she has met all pleading requirements for her TMFPA retaliation claim, she does not respond to McKesson's request to dismiss the supplemental state claim if her FCA claim is dismissed. *See* Pl.'s McKesson-Resp. 11–13. Rather than address the merits of Williams's TMFPA retaliation claim, the Court grants McKesson's unopposed request to dismiss this pendant state law claim in light of the Court's dismissal of Williams's federal law claim.

The Fifth's Circuit's "'general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed.'"[23] And "the Supreme Court has for nearly half a century cautioned federal courts to avoid 'needless decisions of state law.'"[24] The Supreme Court has also stated "that when the single federal-law claim is eliminated at an 'early state' of the litigation, the district court has 'a powerful reason to choose not to continue to exercise jurisdiction.'"[25] Ultimately, "[a] district court has 'wide discretion' in deciding whether it should retain jurisdiction over state law claims once all federal claims have been eliminated."[26]

Here, the Court agrees with McKesson that it should exercise its discretion and dismiss Williams's pendent state law claim in light of its dismissal of the underlying FCA claim that vests this Court with jurisdiction. Given that this case is only at the pleadings/motion to dismiss stage, the

---

[23] *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir. 2011) (quoting *Parker & Parsley Pet. Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992)).

[24] *Id.* (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)) (internal alterations omitted).

[25] *Parker & Parsley*, 972 F.2d at 585 (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343 (1988)).

[26] *Enochs*, 641 F.3d at 161 (quoting *Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999)).

- 16 -

Court has a sound reason not to exercise jurisdiction over Williams's pendent state law claim.[27] Thus, dismissal of Williams's TMFPA retaliation claim, without reaching the merits, is warranted in these circumstances.[28]

## IV.

## CONCLUSION

For the foregoing reasons, the Court concludes that the Complaint's FCA and TMFPA claims fail to meet the pleading standards set forth by Federal Rules of Civil Procedure 12(b)(6) and 9(b). In addition, the Court declines to exercise jurisdiction over Williams's pendent state law retaliation claim. Therefore, dismissal of the Complaint's three claims is warranted.

Having dismissed each count of the Complaint, the Court now must decide whether to provide Williams with an opportunity to replead her dismissed claims. A "[d]ismissal with prejudice for failure to state a claim is a decision on the merits [that] essentially ends the plaintiff's lawsuit." *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). This "drastic remedy" should be used sparingly, because federal policy dictates that cases should be decided "on the basis of the substantive rights involved rather than on technicalities," and as such, plaintiffs must be given an opportunity to state a claim. *Id.*; 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1357 (3d ed. 2004). Here, while it remains unclear whether Williams will be able to come forth with additional facts to overcome the pleading deficiencies stated herein, the Court reserves judgment for now to allow her an opportunity to replead. Though Williams has

---

[27] *Id.*

[28] Note, however, that if Williams adequately repleads her FCA claim—which, for now, the Court dismisses without prejudice—the Court will then consider the substantive grounds upon which McKesson seeks dismissal of Williams's TMFPA retaliation.

amended twice before, this is the Court's first opportunity to judge the sufficiency of the pleadings. For these reasons, the Court finds that Williams should be given a chance to re-plead in an attempt to overcome the deficiencies stated herein.

Accordingly, the Court **GRANTS** both Defendants' Motions to Dismiss (docs. 36, 40) and **DISMISSES WITHOUT PREJUDICE** Counts I, II, and II of the Second Amended *Qui Tam* Complaint (doc. 27). The Court further **ORDERS** that if Williams wishes to file a third amended complaint in an effort to overcome the deficiencies warranting dismissal stated herein, she must do so within thirty (30) days from the date of this Order. These re-pleadings shall be accompanied by a synopsis no longer than ten (10) pages explaining why the amendments overcome the foregoing deficiencies found by the Court.[29] If Defendants wish to respond, they must do so within fourteen (14) days of Williams's filing of her amended pleadings and accompanying synopsis. Such response(s) shall be no longer than ten (10) pages in length. No further briefing will be permitted.

**SO ORDERED.**

**Dated: July 9, 2014**.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[29] The parties shall only address the specific deficiencies that led to dismissal of Williams's three claims. Should Williams overcome these deficiencies, the Court will then address the alternative grounds raised in Defendants' motions, and if necessary, request further briefing from the parties.