### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>AND STATE OF TEXAS, *EX REL.*,<br>AND LESLIE ANN WILLIAMS, PLAINTIFFS<br><br>VS.<br><br>MCKESSON CORPORATION<br>D/B/A MCKESSON PROVIDER TECHNOLOGIES,<br>AND DR. STEPHEN LARSON,   DEFENDANTS | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIV. ACTION NO: 3:12-CV-0371-B |

---

## THIRD AMENDED *QUI TAM* COMPLAINT

---

On behalf of the United States of America and State of Texas, Plaintiff and Relator, Leslie Ann Williams, files this *qui tam* complaint and retaliation complaint against Defendants, McKesson Corporation d/b/a McKesson Provider Technologies, and Stephen Larson, alleging as follows:

### INTRODUCTION

1.     This is an action to recover penalties and damages on behalf of the United States of America and the State of Texas arising from false and fraudulent claims and statements made by the defendants to the United States and State of Texas in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1) *et seq.* (FCA) and the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code Ann. §36.01, *et seq.* (MFPA).

## PARTIES

2.      The United States of America and the State of Texas are Plaintiffs on whose behalf Leslie Ann Williams brings this action under the FCA and MFPA.

3.      Leslie Ann Williams (Relator) is a citizen and resident of the State of Texas. She is a former Senior Director of Account Management for Defendant, McKesson. She brings this action on behalf of both Texas and the United States of America and is the original source of the information provided.

4.      Defendant, McKesson Corporation, is a corporate entity doing business as McKesson Provider Technologies.  This defendant has offices and does business in Dallas County, Texas and may be referred to herein as "Mckesson" or "Defendant Mckesson."  This defendant provides information technology and healthcare revenue cycle management for the healthcare industry that includes patient registration, scheduling, charge coding and charge entry, claims, statement and electronic medical record processing, payment posting and reporting for inpatient, outpatient, hospital, ancillary and physician services.  This defendant may be served with process by serving its registered agent, Prentice Hall Corporation Systems at 211 E. 7th Street, Suite 620, Dallas, Texas 78701.

5.      Defendant, Stephan Larson, (Dr. Larson) is a dentist holding a Doctor of Medical Dentistry (DMD) and employed by University of Texas Health Sciences Center at Houston in its anesthesiology department.  This defendant may be served with process within the premises of UTHSC Medical School at 6431 Fannin Street, Suite 5020, Houston, Texas 77030 or wherever he may be found.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1331 and 31 U.S.C. §3732(a)(b) which specifically confer jurisdiction on this Court for actions brought under the False Claims Act and over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under section §3730.

7.      This Court has personal jurisdiction over defendants pursuant to 31 U.S.C. § 3732(a).

8.      Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) which provides that any action brought under §3230 may be brought in any judicial district in which the defendant can be found, resides, or transacts business.

9.      This Court also has supplemental jurisdiction over qui tam claims brought on behalf of the United States pursuant to 28 U.S.C. §1367, which provides that where the district court has original jurisdiction, it also has supplemental jurisdiction over all claims that form part of the same case or controversy.

10.      A statement of all material evidence and information related to this Complaint has been provided to the Attorney General of the United States, the United States Attorney for the Northern District of Texas, and the Attorney General of Texas.   Such disclosure statement supports the existence of false claims by McKesson in connection with Medicare and Medicaid. A copy of this amended Complaint is also being sent to all of the above officers.

## BACKGROUND

11.     Medicare is the federally funded reimbursement program that pays for the costs of certain health care services and health care. Entitlement to Medicare is based on age, disability or affliction with end-stage renal disease.

12.     Medicaid is public assistance program providing for payment of medical expenses for children under the age of 21, orphans, low-income patients, and pregnant and disabled patients. Funding for Medicaid/Medicaid is shared between state and federal governments.

13.     The False Claims Act and subsequent amendments prohibits persons and entities from knowingly presenting/submitting or causing to be presented/submitted false or fraudulent claims to the Government under the Medicare program. The Texas Medicaid Fraud Prevention Act is modeled after the FCA and seeks to prevent similar harm to the Medicaid Program administered by the State of Texas.

14.     In order to be reimbursed (paid) under either Medicare or Medicaid, health care providers must represent and certify to Medicare/Medicaid that they are certified, licensed and qualified providers.  The healthcare provider must certify to Medicare/Medicaid that he or she is qualified under Medicare/Medicaid rules that he/she is qualified and has met all the requirements regarding credentialing and educational trainings/certificates for providing and being entitled to payment for the particular type of services for which the provider is seeking payment. Medicare/Medicaid rules prohibit healthcare providers from presenting or submitting bills for payments unless met these requirements.

15.     Under Medicare/Medicaid rules, medical doctors with MD or DO degrees and only those with such degrees are authorized to submit their bills to Medicare/Medicaid on what is known as "HCFA Medical 1500 claim form" via paper or electronic.   Under

**THIRD AMENDED *QUI TAM* COMPLAINT**                                                                4

Medicare/Medicaid rules, Dentists, regardless of the services they perform are must submit their bills to Medicare/Medicaid on American Dental Association (ADA) claim forms.

16.     Under Medicare/Medicaid rules, when a health care provider submits his/her bills to Medicare/Medicaid using HCFA Medical 1500 claim form, use of the form certifies to Medicare/Medicaid that the provider is a medical doctor with MD or DO degree and is, therefore, authorized to perform the services for which the bill is being submitted and is eligible to receive payment/reimbursement.

17.     For purposes of making payments/reimbursements to healthcare providers for bills submitted for services rendered to patients, Medicare/Medicaid rules utilize "Provider Taxonomy Codes" to categorize the type, classification, and/or specialization of health care providers.   These are a set of hierarchical codes that consists of codes, descriptions, and definitions for identifying healthcare providers based on their training, educational certification, specialization, and types of services they are authorized to provide under Medicare/Medicaid rules.  Thus, the Taxonomy Codes for identifying medical doctors with MD and DO degrees are different from those for dentists with DMD degrees.  Under Medicare/Medicaid rules, a dentist is not authorized to use the taxonomy codes designated for medical doctors.

18.     Under Medicare/Medicaid rules, healthcare providers (and those acting on their behalf) must submit their bills with the appropriate taxonomy codes to certify to Medicare/Medicaid the type of provider who performed the service (i.e. whether the services were performed by a medical doctor or a dentist or other provider).  When Medicare/Medicaid receives a bill with request for payment/reimbursement, Medicare/Medicaid will first look at the taxonomy code included in the bill to determine the type of provider who performed the services

**THIRD AMENDED *QUI TAM* COMPLAINT**                                                              5

in order to determine if that provider is qualified to perform such services and therefore eligible to receive payment/reimbursement from Medicare/Medicaid.

19.     Under Medicare/Medicaid rules, "CPT" is the taxonomy code designated and reserved for medical doctors with MD or DO degrees and only those with such degrees are authorized to include the letters "CPT" in their bills and request for payment/reimbursement to Medicaid/Medicare. Under Medicare/Medicaid rules, dentists with DMD degrees are not authorized to include the letters "CPT" in their bills and requests for payments/reimbursement.

20.     Under Medicare/Medicaid rules, when a health care provider includes the taxonomy code "CPT" in his/her bill, such inclusion is certification and attestation to Medicare/Medicaid that the provider is a medical doctor with MD or DO degree and is, therefore, authorized to perform the services for which the bill is being submitted and is eligible to receive payment/reimbursement.

21.     Under Medicare/Medicaid rules, anesthesiologists are only those physicians who have MD or DO degree and have subsequently completed four years training in an accredited anesthesiology residency program.

22.     Under Medicare/Medicaid rules, only Anesthesiologist and Mid-Level Anesthesia Providers (such as Anesthesia Assistants) are authorized and required to use certain appropriate anesthesia modifier(s) (in addition with the CPT codes) to denote whether the service was personally performed, medically directed, or medically supervised.

23.     Under Medicare/Medicaid rules, when a health care provider uses anesthesia modifier(s) in in his/her bill (in addition with the CPT codes), this constitutes certification and attestation to Medicare/Medicaid that the provider is a medical doctor with MD or DO degree who has completed the required number of years training in an accredited anesthesiology

residency program, has personally performed or medically directed or medically supervised the anesthesia services and is, therefore, authorized to bill and eligible to receive payment/reimbursement for such services.

24.     Medicare/Medicaid rules authorize use of modifier "AA" only when anesthesia services were performed personally by anesthesiologist (a medical doctor with MD or DO degree who has completed the required number of years training in an accredited anesthesiology residency program), or when an anesthesiologist assists a physician in the care of a single patient.

25.     Medicare/Medicaid rules authorize use of modifier "QK" only when an anesthesiologist (a medical doctor with MD or DO degree who has completed the required number of years training in an accredited anesthesiology residency program) supervises two, three or four concurrent anesthesiologist procedures.

26.     The amounts of reimbursement made under Medicare and Medicaid are based on the type of services being provided, who provides services, and the lengths of time the services are rendered and/or supervised.

27.     Defendant, Stephen Larson, (Dr. Larson) is a dentist holding a Doctor of Medical Dentistry (DMD) and employed by UTHC.  Dr. Larson is not is a medical doctor with MD or DO degree who has completed the required four years training in an accredited anesthesiology residency program.  He is licensed and certified as a general dentist.

28.     Dr. Larson has a Dental license from the Texas Dental Board as a general dentist and has a Dental Anesthesia certificate to administer Anesthesia up to Level 4 cases. This means that he is only authorized to engage in the practice of anesthesiology in cases involving dentistry and may do so up to Level 4 Anesthesia.

29.     Under Medicare/Medicaid rules, Dr. Larson is not (and has never been) authorized to perform anesthesia services in cases not involving dentistry and if he performs such services, then is not authorized/eligible to submit bills for them to Medicare/Medicare and is not eligible to receive payment from Medicare/Medicaid for such services.

30.     Under Medicare/Medicaid rules and at the times relevant to this lawsuit, Dr. Larson only had Anesthesia permits as a General Dentist and not as an Oral Surgeon or a medical doctor (MD or DO) or a Dentist specializing in Anesthesiology.

31.     Under Medicare/Medicaid rules and at the times relevant to this lawsuit, Dr. Larson was permitted to administer certain anesthesia procedures *but only* in a dental setting. Medicare/Medicaid rules have never permitted Dr. Larson to administer any anesthesia procedure in a medical setting not involving dentistry. Dr. Larson to date has not, as required by Medicare/Medicaid rules, been trained, licensed, certified or permitted to perform anesthesia medical services nor teach residents studying medical Anesthesiology, nor supervise mid-level providers of anesthesia in cases not involving dentistry.

32.     For purposes of servicing Medicare/Medicaid patients and billing for such services, Dr. Larson submitted CMS Form 855(a), which is the form required by Medicare/Medicaid for dentists to bill for provision of general dental services. Pursuant to this submission, Medicare/Medicaid assigned a general dentistry Taxonomy to Dr. Larson and he is only authorized to submit bills to Medicare/Medicaid for general dentistry-related services using the ADA billing codes.

33.     Under Medicare/Medicaid rules, if Dr. Larson submits bills to Medicare/Medicaid for payment/reimbursement and includes his general dentistry Taxonomy code, inclusion of such taxonomy code constitutes certification to Medicare/Medicaid that Dr. Larson and he is, indeed,

a licensed dentist and is, therefore, authorized to perform the services for which the bill is being submitted and is eligible to receive payment/reimbursement.

34.     Under Medicare/Medicaid rules, if Medicare/Medicaid receives a bill submitted by or on behalf of Dr. Larson using general dentistry Taxonomy code, Medicare/Medicaid will conclude (unless it conducts more investigation) that Dr. Larson is, indeed, a licensed dentist and is, therefore, authorized to perform the services for which the bill is being submitted and is eligible to receive payment/reimbursement.

35.     Under Medicare/Medicaid rules, Dr. Larson is not (and has never been) authorized to use CPT taxonomy codes, (because these are reserved exclusively for MDs and DOs) in submitting his bills to Medicare/Medicare and he is not authorized to permit or direct a third party to submit bills on his behalf using CPT taxonomy codes.

36.     Under Medicare/Medicaid rules, Dr. Larson is not (and has never been) authorized to use "AA" and "QK" modifiers (because these are reserved exclusively for medical doctors with MD or DO degree who have completed the required number of years training in an accredited anesthesiology residency program) in submitting his bills to Medicare/Medicare and he is not authorized to permit or direct a third party to submit bills on his behalf using CPT taxonomy codes.

37.     Under Medicare/Medicaid rules, Dr. Larson is not (and has never been) authorized to use CPT taxonomy codes, (reserved exclusively for MDs and DOs) in submitting his bills to Medicare/Medicare and he is not authorized to permit or direct a third party to submit bills on his behalf using CPT taxonomy codes.

38.     Under Medicare/Medicaid rules, Dr. Larson is only authorized to submit his bills (or have a third party submit them on his behalf) to Medicare/Medicaid using the paper or

electronic American Dental Association (ADA) claim forms.  He is not authorized to submit his bills (or have a third party submit them on his behalf) to Medicare/Medicaid using paper or electronic HCFA Medical 1500 claim forms.

39.     Defendant, McKesson, is a company that provides revenue cycle and billing services for healthcare providers and submits bills and requests for payment/reimbursement to Medicare/Medicaid on behalf of healthcare providers.

40.     At all times relevant to this lawsuit, McKesson had a contract to provide revenue cycle and billing services and submit bills and requests for payment to Medicare/Medicare on behalf of healthcare providers employed by the University of Texas-Houston Medical Center (UTHC), including Dr. Larson.  By virtue of its contract with UTHC, McKesson was Dr. Larson's agent who submitted bills and requests for payment/reimbursement to Medicare/Medicaid as directed by Dr. Larson.

41.     A brief summary of the billing procedure used by McKesson for Medicare/Medicaid purposes is as follows: after a healthcare provider renders services to a Medicare/Medicaid patient, the provider will sign the patient chart and records to certify that he is either an MD or DO or DMD.  Signing the chart and records constitutes certification to Medicare/Medicaid as required under Medicare/Medicaid rules that the provider is indeed MD or DO or DMD (depending on what the provider signed in the patient charts and records), authorized by Medicare/Medicaid to perform the medical or dental procedure involved, and is entitled/eligible (under Medicare/Medicaid rules) to seek or receive payment/reimbursement from Medicare/Medicaid.  Such certification will direct and instruct McKesson as to the appropriate Taxonomy code and modifier to include in the bill it would send to Medicare/Medicaid since the bills are sent electronically.  When a provider signs in the chart and

records (thereby certifying to Medicare/Medicaid) that he is as a medical doctor (MD or DO), then McKesson will include CPT taxonomy code which certifies to Medicare/Medicaid that the bills are based on medical services provided by a medical doctor. When a provider signs in the chart and records (thereby certifying to Medicare/Medicaid) that he is as an anesthesiologist (medical doctor who has completed the required number of years in a recognized anesthesia residency program) then McKesson will not only include CPT taxonomy code but will also include the appropriate anesthesiology modifier to certify to Medicare/Medicaid that the bills are based on medical services provided by an anesthesiologist (i.e. a medical doctor who has completed the required number of years in a recognized anesthesia residency program). When Medicare/Medicaid received a bill with CPT codes together with anesthesia modifiers, Medicare/Medicaid will assume that the bills as based on services performed by an anesthesiologist (i.e. a medical doctor who has completed the required number of years in a recognized anesthesia residency program), unless Medicare/Medicaid conducts more detailed review of the provider's certification and licensure.

42.     When Medicare/Medicaid approves a bill submitted by McKesson on behalf of a medical provider, Medicare/Medicaid will send the payments/reimbursement to McKesson who will then post the payments for distribution and reporting to the medical provider.

43.     When Medicare/Medicaid denies a bill submitted by McKesson on behalf of a medical provider, McKesson will review the documents related to the bill including patient's chart and records, as well as coding information, and actual charges and the doctor's credentials. After such review, McKesson will either appeal the denial or resubmit the claim (bills) Medicare/Medicaid for payment.

44.    McKesson hired Relator, Leslie Williams, on June 4, 2007 as a Senior Director of Client Management. Part of her responsibilities involved working on claims (bills) submitted by McKesson on behalf of medical providers, which have been denied payment/reimbursement by Medicare/Medicaid.  Specifically, Williams reviewed the documents related to the denied claims (bills) including patient's chart and records, as well as coding information, and actual charges and the doctor's credentials.  She handled the cases involving the bills of medical providers of UTHC's departments of Anesthesiology, Orthopedic Surgery, Radiology, Emergency Medical Services (EMS), OB-GYN, Pediatrics, Neurology and Oral Surgery.

45.    Sometime in May of 2008 and in the course of Williams' employment at McKesson, Dr. Larson's account came to her attention because of repeated denials of claims (bills) submitted to Medicare/Medicaid by McKesson on behalf of Dr. Larson.  Williams discovered that Medicare/Medicaid were denying Dr. Larson's bills because they involved anesthesia procedures he allegedly performed in non-dental settings outside the scope of his licensure.  Williams also discovered that although Dr. Larson had been previously advised and reprimanded by the UTHC to stop providing anesthesia outside of dentistry cases, he continues to do so and continues to certify in the bills that are being sent to Medicare/Medicaid that he is a medical doctor (MD) who has completed the required number of years in a recognized anesthesia residency program.  Williams found out that McKesson knew that Dr. Larson is not medical doctor (MD) who has completed the required number of years in a recognized anesthesia residency program, yet McKesson continued to send his bills to Medicare/Medicaid along with certifications that he is medical doctor (MD) who has completed the required number of years in a recognized anesthesia residency program.

46. Williams reviewed Dr. Larson's patients' accounts, provider enrollment files, certifications and licenses, along with various coding, billing diagnosis, medical, dental codes and modifiers and the claim billing statements he had been submitting for payment. According to the billing data and information in his provider enrollment file, Dr. Larson was billing for and providing supervision for anesthesia services outside the scope of general dentistry and oral dentistry. His billings indicated he administered anesthesia, and supervised others who administered anesthesia, during labor and delivery, various types of general pediatric, orthopedic and trauma surgeries. Dr. Larson was also providing concurrent anesthesia services, coding and signing the patient medical record and billing as a medical doctor (M.D.) although his is only a dentist and not a medical doctor. He also routinely signed off as a medical doctor (M.D.) on medical charts and medical academic records for other mid-level providers and medical students in either a supervisory or provider capacity so as to ensure payment of those providers.

47. Williams then reviewed Dr. Larson's credentials and discovered he was not authorized to administer anesthesia outside the practice of dentistry. Williams discovered that Dr. Larson was submitting billing statements for services that were outside the scope of his authorized practice area.

48. McKesson was acting as Dr. Larson's agent sending his bills to Medicare/Medicaid and requesting for payment/reimbursement. When Dr. Larson administers' anesthesia in non-dentistry cases or supervises others who administer anesthesia in non-dentistry cases, he signs the medical charts and records as a medical doctor (MD) rather than a dentist. He then sends the charts and records to McKesson and requests McKesson to prepare a bill and send to Medicare Medicaid.

49.     Williams found out that beginning as from 1977 and continuing into 2010, Dr. Larson provided anesthesia to numerous patients in non-dental cases and also supervised other healthcare providers in providing anesthesia in non-dental cases.  In each of those non-dental cases, Dr. Larson signed the patient charts and medical records as "medical doctor" (MD) rather than dentist, and forwarded the charts and records to McKesson and asked McKesson to prepare bills for the services and send to Medicare/Medicaid for payment/reimbursement.  Because Dr. Larson signed the medical records and charts as MD, McKesson used HCFA Medical 1500 claim forms rather than American Dental Association (ADA) claim forms to prepare the bills being sent to Medicare/Medicaid.  Also because Dr. Larson signed the medical charts and records as MD, McKesson, in preparing Dr. Larson's bills being sent to Medicare/Medicare, used the CPT Taxonomy codes reserved for exclusively medical doctors with MD or DO degrees, and McKesson also used the "AA" and "QK" anesthesia modifiers which are reserved exclusively for medical doctors (MD) who have completed the required number of years in recognized anesthesia residency programs.

50.     Pursuant to Medicare/Medicaid rules, use of the HCFA Medical 1500 claim forms, CPT Taxonomy codes, and "AA" and "QK" modifiers in submitting Dr. Larson's bills constitute certification to Medicare/Medicaid (as required under Medicare/Medicaid rules) by Dr. Larson and McKesson that Dr. Larson is indeed a medical doctor (MD) who has completed the required number of years in recognized anesthesia residency program.

51.     Upon receiving Dr. Larson's bills on the HCFA Medical 1500 claim forms with CPT Taxonomy codes, and "AA" and "QK" modifiers, Medicare/Medicaid would initially believe that Dr. Larson is indeed a medical doctor (MD) who has completed the required number

of years in recognized anesthesia residency program, unless the agency (Medicare/Medicaid) conducts further review into his credentials, licensure, certification, and educational background.

52.     Williams found out that Medicare/Medicaid usually denied the bill/requests for payment after further review of Dr. Larson's credentials, licensure, certification, and educational background. Although Medicare/Medicaid would indicate that the bill is being denied because Dr. Larson was not a medical doctor (MD) who has completed the required number of years in recognized anesthesia residency program, McKesson would turn around and resubmit the bills to Medicare/Medicaid.

53.     Williams realized that under Medicare/Medicaid rules, only medical doctors (MD) who have completed the required number of years in recognized anesthesia residency programs are authorized to provide anesthesia services and bill Medicare/Medicaid in the types of cases involving Dr. Larson's bills that are being denied. Williams realized that under Medicare/Medicaid rules, the bills being submitted to Medicare/Medicaid by and on behalf of Dr. Larson for anesthesia services he provided outside the scope of dentistry constitute false claims because the bills were being sent to Medicare/Medicare on the HCFA Medical 1500 claim forms with CPT Taxonomy codes, and "AA" and "QK" modifiers, thereby it was being certified to Medicare/Medicaid (by Dr. Larson and McKesson) that Dr. Larson is a medical doctor (MD) who has completed the required number of years in recognized anesthesia residency program.

54.     McKesson's Code of Business Conduct and Ethics, which is available to all employees including Williams, requires compliance of all employees, contractors and vendors, and sets forth a duty to report suspected wrongdoing under the false claims recovery education policy. This policy states in part that "...McKesson is committed to complying with all federal and state laws designed to prevent healthcare fraud and abuse and to detecting and protecting

against fraud, abuse and waste in these programs especially the federal False Claims Act and all applicable state law analogs." And at page 17 of 32, paragraph 2, the Code states: "Any employee, contractor or vendor who has knowledge of or, in good faith suspects any wrongdoing, including a violation of federal or state law, should report it internally immediately so that an investigation can be conducted and appropriate action taken. Reports can be made to a supervisor, the business unit's compliance office, the law department, or anonymously through the Ethics Line, which is available 24-hours a day, 7 days a week (888) 475-4358."

55.     In 2008, pursuant to McKesson's Code of Business Conduct and Ethics, Williams notified her direct supervisor Elizabeth Duhon, McKesson's corporate compliance and revenue cycle director, that Dr. Larson's bills/claims for anesthesia performed outside the scope of dentistry should not be submitted to Medicare/Medicaid.  Williams notified Elizabeth Duhon that submission of Dr. Larson's bills/claims to Medicare/Medicaid on the HCFA Medical 1500 claim forms with CPT Taxonomy codes, and "AA" and "QK" modifiers for anesthesia performed outside the scope of dentistry constitute false claims and hence the bills/claims were being denied.

56.     In June of 2009, Williams discovered that McKesson was still processing Dr. Larson's out of scope bills/claims for medical anesthesia he provided in non-dental surgeries and labor and deliveries, and was submitting such bills to Medicare and Medicaid for payment and resubmitting them after denial. Williams discovered that such bills/claims were still being submitted and resubmitted to Medicare/Medicaid on the HCFA Medical 1500 claim forms with CPT Taxonomy codes, and "AA" and "QK" modifiers.  Ms. Williams again notified Ms. Duhon along with Ms. Courtney Hanna and Joe Lineberg (VP of Corporate Compliance at McKesson)

that this was wrong and constituted false claim. She also notified Jorge Zambra (Assistant Vice-President of Revenue Cycle) and Denise Daily, Coding and Compliance Manager) at UTHC.

57.     In October, November and December of 2009 Williams repeatedly voiced her objections to the management of McKesson and UTHC regarding the false bills/claims being submitted and resubmitted to Medicare/Medicaid by McKesson on behalf of Dr. Larson.

58.     Because of Williams' repeated agitations against Dr. Larson's fraudulent billings and McKesson's submission and resubmission of those bills to Medicare/Medicaid, McKesson and/or its agents attempted to delete and destroy all of Williams' emails, voicemails, journal records, and data discussing the fraud and her objections.

59.     On or about January 4, 2010, Williams instructed one of the managers under her supervision to again review Dr. Larson's credentials and follow up on the status of the investigation submitted to McKesson's corporate compliance regarding the fact that bills/claims from Dr. Larson's out-of-scope services were being submitted and resubmitted to Medicare/Medicaid on HCFA Medical 1500 claim forms with CPT Taxonomy codes, and "AA" and "QK" modifiers.

60.     The next day, Ms. Williams received a thirty (30) days notice of termination from McKesson. The termination was allegedly attributed to a reduction in force (RIF) within the company.

61.     Within a week after Ms. Williams' termination, Defendant McKesson posted an advertisement seeking to hire someone for her position and/or to perform the same tasks and functions that she was performing before her employment was terminated through an alleged reduction in force.

## COUNT 1

### Violation of False Claims Act

62.     Ms. Williams realleges and incorporates by reference paragraphs 1 through 61 above.

63.     Beginning as from 1977 and continuing into 2010, Dr. Larson engaged in practice of unauthorized anesthesia on Medicare/Medicaid patients out side the scope of his certification and licensure in violation of Medicare/Medicaid rules and McKesson, and together with McKesson false information to Medicare/Medicaid in an attempt to deceive and defraud Medicare/Medicaid into paying and reimbursing Dr. Larson on the bills. Specifically, Dr. Larson (a dentist) allegedly performed anesthesia services on Medicare/Medicaid patients in non-dental cases, stated on the patient charts and records that he is a medical doctor (MD), signed in on the patient charts and records that he is a medical doctor (MD), provided these charts and records to McKesson with direction and understanding that McKesson will present bills for the services to Medicare/Medicaid on HCFA Medical 1500 claim forms with CPT Taxonomy codes, and "AA" and "QK" modifiers which under Medicare/Medicaid certifies that Dr. Larson is a medical doctor (MD) who has completed the required number of years in recognized anesthesia residency program. The conduct and actions of Dr. Larson and McKesson in having Dr. Larson perform anesthesia in non-dental cases and in certifying to Medicare/Medicaid that Dr. Larson is a medical doctor (MD) who has completed the required number of years in recognized anesthesia residency program are false and fraudulent; Dr. Larson and McKesson knew that these conduct and actions were false and fraudulent or they deliberately ignored and recklessly disregarded the truth or falsity of the information provided to Medicare/Medicaid.

64.     Beginning as from 1977 and continuing into 2010, Dr. Larson engaged in practice of unauthorized anesthesia on Medicare/Medicaid patients involved in cases in which Dr. Dr. Larson was not authorized to provide anesthesia services under Medicare/Medicaid rules.  Those cases did not involve dentistry and included general surgery, obstetrics and gynecology, plastic surgery, open wound care, etc. Then Dr. Larson and McKesson conspired and submitted bills for these unauthorized anesthesia services to Medicare/Medicaid with the billing forms, taxonomy codes, and anesthesia modifiers reserved exclusively by Medicare/Medicaid for medical doctors (MD) who completed the required number of years in recognized anesthesia residency programs. These conduct and actions of Dr. Larson and McKesson were designed to induce Medicare/Medicaid into paying the bills by deceiving Medicare/Medicaid into believing that Dr. Larson was a Medicare/Medicaid a medical doctor (MD) with the required number of years in recognized anesthesia residency program as required under Medicare/Medicaid rules.

65.     Even when Medicare/Medicaid denied the claims because Dr. Larson was not authorized to perform the services and submit bills on HCFA Medical 1500 claim forms with CPT Taxonomy codes, and "AA" and "QK" modifiers, Dr. Larson and McKesson conspired and resubmitted the bills to Medicare/Medicaid on the same forms with same CPT codes and anesthesia modifiers in an effort to deceive Medicare/Medicaid into paying the bills.

66.     A sample of the bills submitted to Medicare/Medicaid by Dr. Larson and McKesson is being filed as an attachment to this Complaint and marked as Exhibit A.  This Exhibit is fully incorporated into this Complaint. The First column of Exhibit A indicates that Dr. Larson is the healthcare provider submitting the bills (or on whose behalf the bill is submitted). The Second and Third columns show the patient claim numbers and dates of Dr. Larson's alleged services respectively. The Fourth column, "Invoice Create Date" are the dates

**THIRD AMENDED *QUI TAM* COMPLAINT**                                                                19

the claims were generated and sent to Medicare/Medicaid by McKesson on behalf of and at direction of Dr. Larson pursuant to McKesson's contract with UTHC. On these dates, Dr. Larson and McKesson submitted the bills/claims to Medicare/Medicaid asking to be paid/reimbursed for the bills/claims. The Sixth column indicates the amount being billed to Medicare/Medicaid for the alleged services, while the Seventh column indicates that the services allegedly being billed for were general anesthesia. The Eight column, by using CPT Taxonomy codes, certifies to Medicare/Medicaid that Dr. Larson is a medical doctor (MD) with the appropriate qualifications, licensure and training as required under Medicare/Medicaid rules. The CPT codes are reserved exclusively for medical doctors (MD) under Medicare/Medicaid rules. The Ninth column also uses a CPT description to indicate the type of anesthesia provided by Dr. Larson and also constitutes certification to Medicare/Medicaid that he is a medical doctor (MD). In the Tenth column, Dr. Larson and McKesson used anesthesia modifiers to certify to Medicare/Medicaid that Dr. Larson is a medical doctor (MD) with the required number of years in recognized anesthesia residency program as required under Medicare/Medicaid rules. In this tenth column, the defendants used modifier "AA" to indicate several instances when Dr. Larson, allegedly working as a medical doctor who completed residency program, personally provided anesthesia services. They also used modifiers "QK" to indicate several instances when Dr. Larson, allegedly working as a medical doctor who completed residency program, supervised other persons in provision of anesthesia services. The Twelfth column indicates the various non-dentistry cases where Dr. Larson was working (out-of-scope) to provide anesthesia as a medical doctor who completed residency program, in violation of Medicare/Medicaid rules. As seen in the Twelfth column, such out-of-scope cases in which Dr. Larson provided anesthesia services included normal and cesarean childbirths, knee amputation, intestinal infection, injury to the

liver with open wound, etc.  These were all cases in which Medicare/Medicaid rules required that anesthesia should be provided only by medical doctors (MD) who completed the required number of years in recognized anesthesia residency programs.

67.     The number of cases in which Dr. Larson wrongfully provided anesthesia services as a medical doctor (MD) who completed the required number of years in recognized anesthesia residency program and falsely certified to Medicare/Medicaid (in violation of Medicare/Medicaid rules) that he is a medical doctor (MD) who completed the required number of years in recognized anesthesia residency program are in the hundreds.  The actual number of such cases and fraudulent billings will be revealed during discovery in this case.

68.     Under the False Claims Act, the United States and Medicare/Medicaid programs have been damaged by the false and fraudulent bills/claims submitted by Dr. Larson and McKesson and are entitled to a penalty in an amount up to $11,000 or more for each and every false and fraudulent bill/claim, medical and academic record or statement made, used, presented or caused to be made, used or presented by Dr. Larson and McKesson.

## COUNT II

### Violation of Texas Medicaid Fraud Preventive Act

69.     Ms. Williams realleges and incorporates by reference paragraphs 1 through 68 above.

70.     Beginning as from 1977 and continuing into 2010, Dr. Larson engaged in practice of unauthorized anesthesia on Medicare/Medicaid patients out side the scope of his certification and licensure in violation of Medicare/Medicaid rules and McKesson, and together with McKesson false information to Medicare/Medicaid in an attempt to deceive and defraud Medicare/Medicaid into paying and reimbursing Dr. Larson on the bills. Specifically, Dr. Larson

(a dentist) allegedly performed anesthesia services on Medicare/Medicaid patients in non-dental cases, stated on the patient charts and records that he is a medical doctor (MD), signed in on the patient charts and records that he is a medical doctor (MD), provided these charts and records to McKesson with direction and understanding that McKesson will present bills for the services to Medicare/Medicaid on HCFA Medical 1500 claim forms with CPT Taxonomy codes, and "AA" and "QK" modifiers which under Medicare/Medicaid certifies that Dr. Larson is a medical doctor (MD) who has completed the required number of years in recognized anesthesia residency program. The conduct and actions of Dr. Larson and McKesson in having Dr. Larson perform anesthesia in non-dental cases and in certifying to Medicare/Medicaid that Dr. Larson is a medical doctor (MD) who has completed the required number of years in recognized anesthesia residency program are false and fraudulent; Dr. Larson and McKesson knew that these conduct and actions were false and fraudulent or they deliberately ignored and recklessly disregarded the truth or falsity of the information provided to Medicare/Medicaid.

71.     Beginning as from 1977 and continuing into 2010, Dr. Larson engaged in practice of unauthorized anesthesia on Medicare/Medicaid patients involved in cases in which Dr. Dr. Larson was not authorized to provide anesthesia services under Medicare/Medicaid rules. Those cases did not involve dentistry and included general surgery, obstetrics and gynecology, plastic surgery, open wound care, etc. Then Dr. Larson and McKesson conspired and submitted bills for these unauthorized anesthesia services to Medicare/Medicaid with the billing forms, taxonomy codes, and anesthesia modifiers reserved exclusively by Medicare/Medicaid for medical doctors (MD) who completed the required number of years in recognized anesthesia residency programs. These conduct and actions of Dr. Larson and McKesson were designed to induce Medicare/Medicaid into paying the bills by deceiving Medicare/Medicaid into believing that Dr.

Larson was a Medicare/Medicaid a medical doctor (MD) with the required number of years in recognized anesthesia residency program as required under Medicare/Medicaid rules.

72.     Even when Medicare/Medicaid denied the claims because Dr. Larson was not authorized to perform the services and submit bills on HCFA Medical 1500 claim forms with CPT Taxonomy codes, and "AA" and "QK" modifiers, Dr. Larson and McKesson conspired and resubmitted the bills to Medicare/Medicaid on the same forms with same CPT codes and anesthesia modifiers in an effort to deceive Medicare/Medicaid into paying the bills.

73.     A sample of the bills submitted to Medicare/Medicaid by Dr. Larson and McKesson is being filed as an attachment to this Complaint and marked as Exhibit A.  This Exhibit is fully incorporated into this Complaint.  The first column of Exhibit A indicates that Dr. Larson is the healthcare provider submitting the bills (or on whose behalf the bill is submitted).  The second and third columns show the patient claim numbers and dates of Dr. Larson's alleged services respectively.  The fourth column, "Invoice Create Date" are the dates the claims were generated and sent to Medicare/Medicaid by McKesson on behalf of and at direction of Dr. Larson pursuant to McKesson's contract with UTHC.  On these dates, Dr. Larson and McKesson submitted the bills/claims to Medicare/Medicaid asking to be paid/reimbursed for the bills/claims.  The sixth column indicates the amount being billed to Medicare/Medicaid for the alleged services, while the seventh column indicates that the services allegedly being billed for were general anesthesia. The eight column, by using CPT Taxonomy codes, certifies to Medicare/Medicaid that Dr. Larson is a medical doctor (MD) with the appropriate qualifications, licensure and training as required under Medicare/Medicaid rules. The CPT codes are reserved exclusively for medical doctors (MD) under Medicare/Medicaid rules. The ninth column also uses a CPT description to indicate the type of anesthesia provided by Dr.

Larson and also constitutes certification to Medicare/Medicaid that he is a medical doctor (MD). In the tenth column, Dr. Larson and McKesson used anesthesia modifiers to certify to Medicare/Medicaid that Dr. Larson is a medical doctor (MD) with the required number of years in recognized anesthesia residency program as required under Medicare/Medicaid rules. In this tenth column, the defendants used modifier "AA" to indicate several instances when Dr. Larson, allegedly working as a medical doctor who completed residency program, personally provided anesthesia services. They also used modifiers "QK" to indicate several instances when Dr. Larson, allegedly working as a medical doctor who completed residency program, supervised other persons in provision of anesthesia services. The twelfth column indicates the various non-dentistry cases where Dr. Larson was working (out-of-scope) to provide anesthesia as a medical doctor who completed residency program, in violation of Medicare/Medicaid rules. As seen in the twelfth column, such out-of-scope cases in which Dr. Larson provided anesthesia services included normal and cesarean childbirths, knee amputation, intestinal infection, injury to the liver with open wound, etc. These were all cases in which Medicare/Medicaid rules required that anesthesia should be provided only by medical doctors (MD) who completed the required number of years in recognized anesthesia residency programs.

74.     The number of cases in which Dr. Larson wrongfully provided anesthesia services as a medical doctor (MD) who completed the required number of years in recognized anesthesia residency program and falsely certified to Medicare/Medicaid (in violation of Medicare/Medicaid rules) that he is a medical doctor (MD) who completed the required number of years in recognized anesthesia residency program are in the hundreds. The actual number of such cases and fraudulent billings will be revealed during discovery in this case.

75.    Under the Texas Medicaid Fraud Prevention Act, the State of Texas and Medicare/Medicaid programs have been damaged by the false and fraudulent bills/claims submitted by Dr. Larson and McKesson and are entitled to a penalty in an amount up to $11,000 or more for each and every false and fraudulent bill/claim, medical and academic record or statement made, used, presented or caused to be made, used or presented by Dr. Larson and McKesson.

## COUNT III

### Violation of Texas Medicaid Fraud Prevention Act Retaliation Provision

76.    Ms. Williams realleges and incorporates by reference paragraphs 1 through 75 above.

77.    In 2008, Williams notified her direct supervisor Elizabeth Duhon, McKesson's corporate compliance and revenue cycle director, that Dr. Larson's bills/claims for anesthesia performed outside the scope of dentistry should not be submitted to Medicare/Medicaid. Williams notified Elizabeth Duhon that submission of Dr. Larson's bills/claims to Medicare/Medicaid on the HCFA Medical 1500 claim forms with CPT Taxonomy codes, and "AA" and "QK" modifiers for anesthesia performed outside the scope of dentistry constitute false claims and hence the bills/claims were being denied.

78.    In June of 2009, Williams discovered that McKesson was still processing Dr. Larson's out of scope bills/claims for medical anesthesia he provided in non-dental surgeries and labor and deliveries, and was submitting such bills to Medicare and Medicaid for payment and resubmitting them after denial. Williams discovered that such bills/claims were still being submitted and resubmitted to Medicare/Medicaid on the HCFA Medical 1500 claim forms with CPT Taxonomy codes, and "AA" and "QK" modifiers. Ms. Williams again notified Ms. Duhon

along with Ms. Courtney Hanna and Joe Lineberg (VP of Corporate Compliance at McKesson) that this was wrong and constituted false claim. She also notified Jorge Zambra (Assistant Vice-President of Revenue Cycle) and Denise Daily, Coding and Compliance Manager) at UTHC.

79.     In October, November and December of 2009 Williams repeatedly voiced her objections to the management of McKesson and UTHC regarding the false bills/claims being submitted and resubmitted to Medicare/Medicaid by McKesson on behalf of Dr. Larson.

80.     Because of Williams' repeated agitations against Dr. Larson's fraudulent billings and McKesson's submission and resubmission of those bills to Medicare/Medicaid, McKesson and/or its agents attempted to delete and destroy all of Williams' emails, voicemails, journal records, and data discussing the fraud and her objections.

81.     On or about January 4, 2010, Williams instructed one of the managers under her supervision to again review Dr. Larson's credentials and follow up on the status of the investigation submitted to McKesson's corporate compliance regarding the fact that bills/claims from Dr. Larson's out-of-scope services were being submitted and resubmitted to Medicare/Medicaid on HCFA Medical 1500 claim forms with CPT Taxonomy codes, and "AA" and "QK" modifiers.

82.     The next day, Ms. Williams received thirty (30) days notice of termination from McKesson. The termination was allegedly attributed to a reduction in force (RIF) within the company.

83.     Within a week after Ms. Williams' termination, Defendant McKesson posted an advertisement seeking to hire someone for her position and/or to perform the same tasks and functions that she was performing before her employment was terminated through an alleged reduction in force.

THIRD AMENDED *QUI TAM* COMPLAINT                                                                 26

84.    Texas Human Resources Code §36.115 provides that "[a] person discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms of employment by the person's employer because of a lawful act taken by the person in furtherance of an action under this subchapter, including investigation for... an action filed under this subchapter" is entitled to not less than two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorney's fees.

85.    As set forth above, McKesson retaliated against Ms. Williams and terminated her for continuing to raise concerns that McKesson was submitting false claims on behalf of Dr. Larson, investigating those concerns and reporting them to her superiors.

86.    As a direct and proximate result of this unlawful discharge, Ms. Williams has suffered emotional pain and mental anguish along with serious hardship, including lost wages and special damages associated with her efforts to obtain alternative employment, in an amount to be proven trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Relator, Leslie Ann Williams, demands a jury trial in this case and prays that judgment be entered in its favor as follows:

1.    On Count One under the False Claims Act for the amount of the United States' damages, trebled as required by law, and such civil penalties as are required by law, together with all such relief as may be just and proper.

2.    On Count Two under the Texas Medicaid Fraud Prevention Act for the amount to the State of Texas' damages trebled as required by law, and such civil penalties as are required by law, together with all such relief as may be just and proper.

3.    On Count Three for compensatory and punitive damages in an undetermined amount, together with costs and interest, and for such other relief as may be just and proper.

Respectfully submitted,

**MENES LAW FIRM**

/s/ N. Jude Menes
N. Jude Menes
Texas Bar State No. 24004815
One Empire Building, Suite 635
1140 Empire Central Drive
Dallas, Texas 75247
Phone: 214-631-2751
Fax: 214-631-2753
ATTORNEY FOR
LESLIE ANN WILLIAMS

## VERIFICATION

BEFORE ME, the undersigned authority, personally appeared Leslie Ann Williams who states: My name is Leslie Ann Williams and I am the Relator in this case. I have been involved in the work of Physician Practice Management, Provider Enrollment & Credentialing, Hospital & Revenue Cycle billing and seeking payments/reimbursements on behalf of hospitals & healthcare providers from Medicare/Medicaid and health insurance companies for more than 30 years. I have knowledge of the rules, regulations, and procedures involved in seeking and obtaining payment/reimbursements from Medicare/Medicaid including but not limited to healthcare providers' qualifications, trainings, certifications, and reviews. As a former employee of Defendant McKesson, I have knowledge about its billing procedure and processes. I verify that the facts and information stated in this Third Amended Qui Tam Complaint and I, hereby, state that such facts and information are true and correct. I also state that the document being filed as Exhibit A to this Complaint is a true and correct copy of what it purports to be.

Leslie Ann Williams

SUBSCRIBED AND SWORN TO BEFORE ME on ___Aug 7, 2014_____, by
Leslie Williams.

_____
Notary Public, State of ___CA____

STACIE ORTIZ
Commission # 1975979
Notary Public - California
San Diego County
My Comm. Expires Apr 22, 2016

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing pleading was electronically filed with the clerk for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court, and the electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means, as follows:

Scott McBride and John W. Petrelli
BakerHosteler, LLP
811 Main Street, Suite 1100
Houston, Texas 77002
smcbride@bakerlaw.com
jpetrelli@bakerlaw.com

Sean McKenna and Glen Harrison
Assistant United States Attorneys
Northern District of Texas
1100 Commerce Street, Third Floor
Dallas, Texas 75242
sean.mckenna@USDOJ.gov

Greg T. Kinskey
Kerry Muldowney Ascher
Assistant Attorneys General of Texas
Civil Medicaid Fraud Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711
Phone 512-936-1306
greg.kinskey@texasattorneygeneral.gov

David S. Coale
Lynn Tillotson Pinker & Cox, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Phone: 214-292-3601
dcoale@lynnllp.com

Thomas L. Cubbage III and Ethan M. Posner
Covington & Burling, LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
Phone: 202-662-6000
tcubbage@cov.com and eposner@cov.com

| | |
|---|---|
| _8/8/14_ | /s/ N. Jude Menes |
| Date | N. Jude Menes |